**FITAPELLI & SCHAFFER, LLP**
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LUCILLE PALLADINO, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br>-against-<br><br>**GUARDIAN VETERINARY MANAGEMENT LLC; 18E KINGSBRIDGE RD LLC; 4 HARDSCRABBLE HEIGHTS LLC; HARDSCRABBLE VETERINARY HOSPITAL PLLC; and JASON BERG, individually,**<br><br>**Defendants.** | **Case No. 1:25-CV-355**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Lucille Palladino ("Plaintiff" or "Palladino"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to herself, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover underpayment caused by failure to pay overtime compensation, untimely wage payments, and other damages for Plaintiff and similarly situated non-exempt manual positions including but not limited to veterinary technicians, veterinary assistants, and facilities workers (collectively, "Veterinary Workers") who work or have worked for Guardian Veterinary Management LLC, 18E Kingsbridge RD LLC, 4 Hardscrabble Heights LLC, Hardscrabble Veterinary Hospital, PLLC, and Jason Berg (collectively, "Guardian Vet" or "Defendants").

2.      Guardian Vet is a premier veterinarian provider in New York State that has employed

1

over 300 workers throughout various locations since it existence. Headquartered at its 29,000 square-foot animal hospital located at 4 Hardscrabble Heights, Brewster, New York 10509, Guardian Vet also owns and operates two other facilities at 18 E. Kingsbridge Road, Bronx, New York 10468 and 517 Route 211, Middletown, New York 10941.[1]

3.    Guardian Vet boasts its extensive services to customers, including, but not limited to, 24/7 emergency & critical care, cardiology, internal medicine, surgery, neurology/neurosurgery, dermatology, laboratory diagnostics, ophthalmology, oncology, and rehabilitation services.[2]

4.    Guardian Vet was opened by, and is currently still owned and operated by, Dr. Jason Berg, DVM ("Berg").

5.    At all times relevant, Defendants have been part of a single integrated enterprise that has jointly employed Plaintiff and other Veterinary Workers.

6.    At all times relevant, Defendants three locations are interrelated by sharing employees, a common website, and paying Veterinary Workers on a shared paystub.

7.    At all times relevant, labor relations and common management are ultimately controlled by Berg, and common ownership and financial control is held by Berg.

8.    To meet the demands of its extensive services to customers, Guardian Vet has employed over 300 Veterinary Workers between the three locations.

9.    Part of the workforce includes Veterinary Workers who have been misclassified as exempt from overtime, despite having primarily non-exempt job duties and lacking the educational requirement for any exemption. In this regard, Plaintiff worked for Defendants as a Veterinary Technician and received a salary in this position. Despite regularly working overtime hours, Plaintiff

---

[1] *See* Our Locations, Guardian Vet Website (available at https://guardianveterinaryspecialists.com/our-locations/) (last accessed Jan. 13, 2025).
[2] *See* Specialties, Guardian Get Website (available at https://guardianveterinaryspecialists.com/) (last accessed Jan. 13, 2025)

did not receive overtime pay.

10.    Veterinary technicians, like Plaintiff and others, do not meet the "prolonged course of . . . study" required for the Professional Exemption. *See* Opinion Letter Fair Labor Standards Act (FLSA), 1997 WL 998018, at *1 ("[Licensed Veterinary Technicians 'LVTs'] are best characterized as skilled nonexempt technicians." Therefore, "LVTs do not meet the requirements in Regulation 541.3 for exemption as a professional employee. As a result these employees would be subject to both the minimum wage and overtime requirements of the FLSA and should be paid accordingly.); *see also Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 746 (6th Cir. 2000) (discussing prolonged study requirement and citing opinion letter).

11.    Additionally, Plaintiff and other Veterinary Workers received additional payments labeled "Misc Earning" during her employment. This additional form of compensation was not factored into her or other workers' regular rate of pay for the purposes of calculating overtime.

12.    At all relevant times, Defendants have compensated Plaintiff and all other Veterinary Workers in New York on a bi-weekly basis.

13.    Despite being manual workers, Defendants failed to properly pay Plaintiff and other Veterinary Workers in New York their wages within seven calendar days after the end of the week in which these wages were earned as required by NYLL § 191.

14.    In this regard, Defendants failed to provide timely wages to Plaintiff and all other similarly situated Veterinary Workers in New York as required by the NYLL.

15.    Manual Workers as contemplated by NYLL § 191 are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

16.    As such, the failure to provide wages owed to Plaintiff and all other similarly situated Veterinary Workers, according to NYLL § 191 constitutes an "especially acute injury."

*See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019).

17.    Defendants also failed to provide Plaintiff and all other similarly situated Veterinary Workers with proper time of hire notices as required by the NYLL.

18.    Defendants similarly failed to provide Plaintiff and all other similarly situated Veterinary Workers with accurate statements of wages pursuant to NYLL § 195(3), as Plaintiff's wage statement failed to show her regular rate of pay, her regular hours worked, overtime hours worked, and her proper overtime rate.

19.    Plaintiff relied on her paystubs to ensure that Defendants paid her the correct rate for the hours she worked.

20.    Due to Defendants' failure to provide the correct number of hours worked on the wage statements provided to Plaintiff and similarly situated Veterinary Workers, Plaintiff and Veterinary Workers were misinformed about the correct number of hours they worked and their rate of pay, thus they were deprived of the information necessary for reviewing their wages and hours worked, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

21.    Defendants' incorrect wage statements allowed Defendants to continue their unlawful wage and hour scheme without Plaintiff's and Veterinary Workers' awareness that they were being underpaid.

22.    Had Plaintiff and Veterinary Workers been able to see that they were not being lawfully paid via their statement notices, they would have been able to avoid underpayment of their wages. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (plaintiff

establishes concrete harm if plaintiff can show she "would have avoided some actual harm or obtained some actual benefit if accurate [statements] had been provided"); *see also Van Duser v. Tozzer Ltd.*, No. 23 Civ. 9329 (AS), 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024).

23.    Plaintiff's inability to crosscheck their pay statements constitutes concrete harm.

24.    Accordingly, Plaintiff and Veterinary Workers are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(3).

25.    Plaintiff brings this action on behalf of herself and all other similarly situated Veterinary Workers in New York pursuant to Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law, Article 6, §§ 190 *et seq.* ("NYLL").

## THE PARTIES

### Plaintiff

**Lucille Palladino**

26.    Palladino is an adult individual who is a resident of Sound Beach, New York.

27.    Palladino was employed by Defendants as a veterinary technician from approximately December 2017 through November 2021.

28.    Palladino is a covered employee within the meaning of the FLSA and the NYLL.

29.    A written consent for Palladino is being filed with this Class Action Complaint.

### Defendants

30.    Defendants jointly employed Plaintiff and similarly situated Veterinary Workers at all times relevant.

31.    Defendants have substantial control over Plaintiff and Veterinary Workers working conditions, and over the unlawful policies and practices alleged herein.

32.     Defendants are part of a single integrated enterprise that has jointly employed Plaintiff and similarly situated employees at all times relevant.

33.     During all relevant times, Defendants' operations are interrelated and unified.

34.     During all relevant times, Guardian Vet shared common management, and were centrally controlled and/or owned by Defendants.

35.     During all relevant times, Defendants allowed and instructed Plaintiff and Veterinary Workers to transfer or be shared by the different locations controlled and/or owned by Defendants.

36.     During all relevant times, Defendants have applied the same employment policies, practices, and procedures to Plaintiff and Veterinary Workers.

37.     During all relevant times, Defendants have controlled the labor relations of the all Guardian Vet locations.

38.     During all relevant times, Defendants have been Plaintiff's and Veterinary Workers' employer within the meaning of the FLSA and NYLL.

**Guardian Veterinary Management LLC**

39.     Guardian Veterinary Management LLC is a Domestic Limited Liability Company organized and existing under the laws of New York.

40.     Guardian Veterinary Management LLC was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

41.     Guardian Veterinary Management LLC is located at 4 Hardscrabble Heights, Brewster, NY 10509.

42.     Guardian Veterinary Management LLC has maintained control, oversight, and

direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

43.    Upon information and belief, at all relevant times, Guardian Veterinary Management LLC has had an annual gross volume of sales in excess of $500,000.

44.    At all times relevant, Guardian Veterinary Management LLC have employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**18E Kingsbridge RD LLC**

45.    18E Kingsbridge RD LLC is a Domestic Limited Liability Company organized and existing under the laws of New York.

46.    18E Kingsbridge RD LLC was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

47.    18E Kingsbridge RD LLC is located at 4 Hardscrabble Heights, Brewster, NY 10509.

48.    18E Kingsbridge RD LLC has maintained control, oversight, and direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

49.    Upon information and belief, at all relevant times, 18E Kingsbridge RD LLC has had an annual gross volume of sales in excess of $500,000.

50.    At all times relevant, 18E Kingsbridge RD LLC have employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**4 Hardscrabble Heights LLC**

51.    4 Hardscrabble Heights LLC is a Domestic Limited Liability Company organized and existing under the laws of New York.

52.    4 Hardscrabble Heights LLC was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

53.    4 Hardscrabble Heights LLC is located at 4 Hardscrabble Heights, Brewster, NY 10509.

54.    4 Hardscrabble Heights LLC has maintained control, oversight, and direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

55.    Upon information and belief, at all relevant times, 4 Hardscrabble Heights LLC has had an annual gross volume of sales in excess of $500,000.

56.    At all times relevant, 4 Hardscrabble Heights LLC have employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**Hardscrabble Veterinary Hospital PLLC**

57.    Hardscrabble Veterinary Hospital PLLC is a Domestic Professional Service Limited Liability Company organized and existing under the laws of New York.

58.    Hardscrabble Veterinary Hospital PLLC was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

59.    Hardscrabble Veterinary Hospital PLLC is located at 4 Hardscrabble Heights,

Brewster, NY 10509.

60.      Hardscrabble Veterinary Hospital PLLC has maintained control, oversight, and direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

61.      Upon information and belief, at all relevant times, Hardscrabble Veterinary Hospital PLLC has had an annual gross volume of sales in excess of $500,000.

62.      At all times relevant, Hardscrabble Veterinary Hospital PLLC have employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**Jason Berg**

63.      Upon information and belief, Berg is a resident of the State of New York.

64.      At all relevant times herein, Berg has owned and operated Guardian Vet.

65.      At all relevant times, Berg has maintained a direct and significant management role at Guardian Vet.

66.      At all relevant times, Berg has been actively involved in managing the day-to-day operations of Guardian Vet.

67.      Berg makes determinations regarding the hiring and firing of employees. In this regard, Berg personally hired Plaintiff for employment.

68.      At all relevant times herein, Berg sets the rate of pay for Guardian Vet employees. In this regard, Berg personally set Plaintiff's rate(s) of pay during her employment.

69.      Guardian Vet's website identifies Berg as the founder, CEO, and president of Guardian Vet.[3]

---

[3]    *See* Executive Team, Jason Berg, Guardian Vet Website (available at https://guardianveterinaryspecialists.com/executive-team) (last accessed Jan. 13, 2025).

70.     At all relevant times, Berg has had the power to stop any illegal pay practices that harmed Plaintiff and Veterinary Workers at Guardian Vet.

71.     At all relevant times, Berg has had the power to transfer the assets and/or liabilities of Guardian Vet.

72.     At all relevant times, Berg has had the power the declare bankruptcy on behalf of Guardian Vet.

73.     At all relevant times, Berg has had the power to enter into contracts on behalf of Guardian Vet.

74.     At all relevant times, Berg has had the power to close, shut down, and/or sell Guardian Vet.

75.     Berg is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, he has employed and/or jointly employed Plaintiff and Veterinary Workers.

## JURISDICTION AND VENUE

76.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiff and Veterinary Workers' state law claims pursuant to 28 U.S.C. § 1367.

77.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

78.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

79.  Plaintiff brings the First Cause of Action, FLSA claim, on behalf of two subclasses:

> (1) All current and former Veterinary Workers employed by Guardian Vet who were paid a salary

without overtime compensation between August 5, 2019[4] and the date of final judgment in this matter, who elect to opt-in to this action; and

(2) All current and former Veterinary Workers who received additional forms of compensation such as "misc earning" and/or other forms of renumeration that were not factored into their overtime rate(s) of pay between August 5, 2019[5] and the date of final judgment in this matter, who elect to opt-in to this action.

Together both subclasses will be referred to herein as the "FLSA Collective."

80. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective for their overtime hours worked.

81. Consistent with Defendant's policies and patterns or practices, Plaintiff and the FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay, which should have included all forms of compensation, for all hours worked beyond 40 per workweek.

82. All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

83. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, the correct overtime

---

[4] This class period is due to a tolling agreement that was executed between Plaintiff and Defendants that tolled the FLSA and NYLL statute of limitations back to August 1, 2015. The tolling agreement became effective on October 28, 2022 and was canceled on January 10, 2025. Thus, there were 805 days of tolling.
[5] *Id.*

wages for all hours worked in excess of 40 hours per workweek.

84.    An employer "willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *See Young v. Cooper Cameron Corp.*, 586 F. 3d 201, 207 (2d Cir. 2009).

85.    According to *Whiteside v Hover-Davis*, "a claim is facially plausible 'when the Plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *See* 995 F.3d 315, 323 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For a Plaintiffs to nudge their claim 'across the line from conceivable to plausible,' [they] must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *See Id.* (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1995)).

86.    Defendants' willful violation of the FLSA is evidenced by the clear nature of the violation – it is without question illegal to deny employees their overtime compensation.

87.    Defendants knew or should have known that their wage and hour practices with regards to Plaintiff and the FLSA Collective violated the FLSA's overtime and minimum wage requirements. In this regard, district courts around the country, including district courts throughout New York, have repeatedly ruled that employees must be paid for all hours they work, paid in a timely manner, and paid their premium overtime compensation which includes all forms of compensation being factored into a worker's overtime rate. Moreover, Defendants misclassified Plaintiff and other Veterinary Workers as exempt from overtime despite the DOL opinion letters that are easily found online by rudimentary web searches.

88.    Defendants' willful violation of the FLSA is further evidenced by their operation of a

business with three locations in New York State, including a 29,000 square foot animal hospital serving Putnam, Dutchess, Westchester, Orange, Rockland, and Bronx counties.

89.  To support their operations, Defendants either employ or contract multiple attorneys with the specific job duties of ensuring compliance with federal and state labor laws, or Defendants recklessly disregard these laws.

90.  Accordingly, it is clear that Defendants recklessly disregarded the law, because their substantial operation size does not allow for mere ignorance of their flagrant violation of the FLSA.

91.  As such, Defendants' failure to pay overtime constitutes a willful violation of the FLSA.

## NEW YORK CLASS ACTION ALLEGATIONS

92.  Plaintiff brings the Second, Third, Fourth, and Fifth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following three subclasses:

(1) All persons who work or have worked as Veterinary Workers for Guardian Vet and were paid a salary between August 5, 2015[6] and the date of final judgment in this matter, who elect to opt-in to this action ("Misclassification Class");

(2) All current and former Veterinary Workers who received additional forms of compensation such as "misc earning" and/or other forms of renumeration that were not factored into their overtime rate(s) of pay between August 1, 2015[7] and the date of final judgment in this matter, who elect to opt-in to this action ("Regular Rate Class"); and

(3) All persons who work or have worked as Veterinary Workers for Guardian Vet in New York who were paid on a bi-weekly basis between August 1, 2015 and the date of

---

[6] *Id.*
[7] *Id.*

final judgment in this matter, who elect to opt-in to this action ("Untimely Wages Class").

Collectively the three subclasses will be referred to herein as the "New York Classes."

93. The members of the New York Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

94. There are more than three hundred members of the New York Classes.

95. Plaintiff's claims are typical of those claims that could be alleged by any member of the New York Classes, and the relief sought is typical of the relief which would be sought by each member of the New York Classes in separate actions.

96. Plaintiff and the New York Classes have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the New York Classes similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the New York Class.

97. Plaintiff is able to fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the New York Classes.

98. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

99. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender.

100. Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually and include, but are not limited to, the following:

> (a) Whether Defendants correctly compensated Plaintiff and the NYLL Classes at time and one half their regular rate of pay for hours worked in excess of 40 per workweek;

> (b) Whether Defendants correctly compensated Plaintiff and the New York Classes on a timely basis;

> (c) Whether Defendants failed to furnish Plaintiff and the NYLL Classes with a proper time of hire wage notice, as required by the NYLL; and

> (d) whether Defendants failed to furnish Plaintiff and the New York Classes with accurate statements with every payment of wages, as required by the NYLL.

## PLAINTIFF'S FACTUAL ALLEGATIONS

101. Palladino was employed by Guardian Vet as both a mobile veterinary technician and a stationary veterinary technician from December 2017 through November 2021.

102. As a mobile veterinary technician, Plaintiff would drive to her assigned Guardian Vet location and/or other animal hospitals/veterinary offices (as directed by Guardian Vet) and operate the ultrasound machine on animals. Thus, she would service all three Guardian Vet locations on a regular basis.

103. Unless she missed time for vacation, sick days, or holidays, or obtained additional shifts, Palladino generally worked 5 days per week from approximately 7:00am or 8:00am and ending the work day between 9:00pm and 10:00pm.

104. Palladino was paid a set salary of approximately $63,000 for the time she worked as a mobile ultrasound technician. Palladino did not receive overtime pay for hours worked over 40

in a workweek.

105. Defendants did not keep accurate records of time she worked in this position.

106. In or around 2019, Palladino began to work overnight veterinary technician shifts as necessary at the Guardian Vet location in Middletown, New York. When she worked such overnight shifts, she was paid $32 per hour plus $100 in "misc earning."

107. Palladino's primary duties during her employment were that of prepping animals for ultrasound tests, operating the ultrasound machine, taking pet history, placing catheters in animals, taking blood, cleaning cages/floors/animal areas, and otherwise assisting the veterinarians as needed.

108. Plaintiff was not able to hire or fire individuals, she did not interview individuals for employment, nor did she make recommendations as to the hiring/firing/disciplining of other workers.

109. Palladino does not have an advanced educational degree, nor is one needed for her position. Specifically, the requirements for a veterinary technician license is the equivalent of an associate's degree.[8] Likewise, the certification to operate ultrasound machines is also the equivalent of an associate's degree.

110. At all times relevant, Palladino was entitled to receive time and one-half her regular rate of pay for all hours worked beyond 40 per workweek.

111. Defendants did not pay Palladino the proper overtime wages for all of the time that she suffered and was required to work each workweek.

---

[8] See License Requirements for Veterinary Technicians, New York State Education Department Website (available at https://www.op.nysed.gov/professions/veterinary-technician/license-requirements#:~:text=Any%20use%20of%20the%20title,meet%20education%20and%20examination%20requirements.#:~:text=Any%20use%20of%20the%20title,meet%20education%20and%20examination%20requirements) (last accessed January 13, 2025).

112. Defendants failed to furnish Palladino with a proper time of hire notice, as required by the NYLL.

113. Due to Defendants' failure to provide a proper time of hire notice, Palladino was misinformed about her correct method of compensation. Indeed, given that she was misclassified, any notice indicating her salary pay (and lack of overtime eligibility) deprived her of information necessary to review her wages to determine if she was to be compensated correctly.

114. Defendants also failed to furnish Palladino with an accurate statement of wages with each payment of wages as required by the NYLL.

115. Due to Defendants' failure to provide the correct number of hours worked on the wage statements and rates of pay, Palladino was misinformed about the correct number of hours she worked, and was thus deprived of the information necessary to review her wages and hours worked, which was a direct cause for her economic injury, and in fact, resulted in her wages being underpaid.

116. During Palladino's employment, over twenty-five percent of her duties were physical tasks, including but not limited to: (1) carrying and holding animals; (2) operating veterinary equipment; (3) assisting in physical examination of animals; (4) placing catheters in pets; (5) drawing blood; (6) cleaning cages, floors, and work areas; (7) physically assisting veterinarians as necessary during treatments, and (8) standing for long periods of time.

117. Despite regularly spending more than twenty-five percent of her daily job duties performing these physical tasks, when Palladino was paid, she was compensated by Defendants on an untimely bi-weekly basis in contravention of NYLL § 191(1)(a).

118. As a result of Defendant's untimely wage payments, Palladino was underpaid for the first seven days of each bi-weekly pay period, and thus Defendants paid Palladino on an

untimely basis.

119.     For instance, for the pay period of June 15, 2020 to June 28, 2020, Palladino should have received payment for the first week of work no later than June 29, 2020. However, she did not receive payment for this weeks' wages until July 3, 2020. As such, she was paid on an untimely basis.

120.     Defendants' failure to pay on her normal pay date denied Palladino the time-value of her money by Defendants' underpayments. Palladino was unable to invest, save, or purchase utilizing the wages she earned and was owed for all underpaid workweeks.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

121.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

122.     At all times relevant, Plaintiff and the FLSA Collective were, are, or have been employees, and Defendants were, are, or have been employers of Plaintiff and the FLSA Collective, within the meaning of 29 U.S.C §§ 201 *et seq*.

123.     At all times relevant, Defendants have been employers of Plaintiff and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq*.

124.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of FLSA Collective.

125.     Plaintiff and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

126.    Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek.

127.    Defendant's violations of the FLSA have been knowing, willful, and in reckless disregard of the FLSA's overtime requirements.

128.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**<u>SECOND CAUSE OF ACTION</u>**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the NYLL Misclassification and Regular Rate Classes)**

129.    Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

130.    At all times relevant, Plaintiff and the NYLL Classes have been employees of Defendants, and Defendants have been employers of Plaintiff and the NYLL Classes within the meaning of the NYLL §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

131.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiff and the NYLL Classes.

132.    Defendants failed to pay Plaintiff and the NYLL Classes the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate – for all hours worked beyond 40 per workweek.

133.    Thus, Defendants have violated the NYLL's overtime requirements of the NYLL.

134.    Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Classes are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
**New York Labor Law – Failure to Provide Proper Annual Wage Notices**
**(Brought on behalf of Plaintiff and the NYLL Misclassification and Regular Rate Classes)**

135.    Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

136.    Defendants have failed to supply Plaintiff and the NYLL Classes with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring and at subsequent wage changes, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

137.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the NYLL Classes are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the NYLL Misclassification and Regular Rate Classes)**

138.   Plaintiff reallege and incorporate by reference all allegations in all preceding paragraphs.

139.   Defendants failed to supply Plaintiff and the NYLL Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly  rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

140.   Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the NYLL Class are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Timely Wages**
**(Brought on behalf of Plaintiff and the New York Untimely Wages Class)**

141.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

142.   The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiff and the New York Classes.

143.    Defendants failed to pay Plaintiff and the New York Classes on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiff and the New York Class being underpaid.

144.    Due to Defendant's violations of the NYLL, Plaintiff and the New York Classes are entitled to recover from Defendants the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Veterinary Workers who are presently, or have at any time between August 5, 2019 and through and including the date of this Court's issuance of court-supervised notice, worked for Guardian Vet.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    Designation of Plaintiff as representative of the New York Rule 23 Classes and counsel of record as Class Counsel;

E.    Unpaid overtime wages and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.    Liquidated damages permitted by law pursuant to the NYLL;

G.    Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff and the NY Rule 23 Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article § 198;

H.    Prejudgment and post-judgment interest;

I.    Reasonable attorneys' fees and costs of the action; and

J.    Such other relief as this Court shall deem just and proper.

Dated: New York, New York
        January 14, 2025

                                        Respectfully submitted,


                                         /s/ Brian S. Schaffer
                                        Brian S. Schaffer

                                        **FITAPELLI & SCHAFFER, LLP**
                                        Brian S. Schaffer
                                        Armando Ortiz
                                        Katherine Bonilla
                                        28 Liberty Street, 30th Floor
                                        New York, New York 10005
                                        Telephone: (212) 300-0375

                                        *Attorneys for Plaintiff and*
                                        *the Putative Class*

## FAIR LABOR STANDARDS ACT CONSENT

1.     I consent to be a party plaintiff in a lawsuit against GUARDIAN VETERINARY and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.     By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_Lucille palladino (Jan 4, 2022 12:57 EST)_

Signature

# Lucille palladino

Full Legal Name (Print)